# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

RIDGE SENECA PLAZA, LLC,

                                      Plaintiff,

-vs-

BP PRODUCTS NORTH AMERICA, EAST RIDGE ENTERPRISES, INC., FIRST ALLIED SHOPPING CENTER, L.P. and FISHER ASSOCIATES, P.E., L.S., P.C.,

                                      Defendants.       **DECISION AND ORDER**

FISHER ASSOCIATES, P.E., L.S., P.C.,

                                        06-CV-6333 CJS

                                Cross-Claimant,

-vs-

BP PRODUCTS NORTH AMERICA, INC., EAST RIDGE ENTERPRISES, INC., FIRST ALLIED SHOPPING CENTER, L.P. and FISHER ASSOCIATES, P.E., L.S., P.C.,

                                Cross-Defendants.

## APPEARANCES

| | |
|---|---|
| For Plaintiff: | Alan J. Knauf, Esq.<br>Knauf Shaw LLP<br>1125 Crossroads Building<br>Two State Street<br>Rochester, NY 14614<br>(585) 546-8430 |
| For defendant First Allied Shopping Center, LLP: | Beryl Nusbaum, Esq.<br>Woods Oviatt Gilman LLP<br>Two State Street Suite 700<br>Rochester, NY 14614<br>(585) 987-2817 |

## INTRODUCTION

**Siragusa, J.** This case, brought by Ridge Seneca Plaza, LLC ("Ridge Seneca") is before the Court on a motion for summary judgment (Docket No. 104) filed by First Allied Shopping Center, L.P. ("First Allied").[1] For the reasons stated below, the Court grants the application.

## FACTUAL BACKGROUND

Pursuant to Western District of New York Local Rule, both parties submitted statements of fact. W.D.N.Y. Loc. R. Civ. P. 56 (2011). The source of the following background is from the parties' statements and not in dispute, except where indicated below. Ridge Seneca Plaza (referred to as the "Premises" in the Purchase Agreement), the property that is the subject matter of this lawsuit, is located at the intersection of the northwest corner of Seneca Avenue and the south side of Ridge Road East in Rochester, New York, and is owned by Plaintiff Ridge Seneca Plaza, LLC ("Ridge Seneca"). Ridge Seneca Plaza, LLC ("Ridge Seneca") purchased this property from First Allied in February of 2001 under the terms of a contract dated September 14, 2000, as amended on January 11, 200l. The purchase contract was originally entered into by First Allied with Sylvan Enterprise Corp. ("Sylvan") and Sylvan assigned the contract to Ridge Seneca on the day of closing, February 27, 2001. Sylvan and Ridge Seneca were both represented by Harter Secrest & Emery LLP, and First Allied was represented by Woods Oviatt Gilman LLP.

---

[1] The motion for summary judgment (Docket No. 102) filed by Fisher Associates, P.E., L.S., P.C., was heard by U.S. Magistrate Judge Jonathan W. Feldman on consent of the parties. (*See* Docket No. 125, Consent and Reference of a Dispositive Motion to a Magistrate Judge.) Judge Feldman granted Fisher's motion for summary judgment in a decision and order filed on March 28, 2011 (Docket No. 180).

Sylvan and Ridge Seneca were both managed and controlled by Rabbi Shlomo Noble ("Noble"), who executed the assignment of the Contract on the part of both Sylvan and Ridge Seneca. The Purchase Agreement provided in Paragraph 6, as follows:

6.  Condition of Premises.

6.1  Buyer specifically acknowledges and agrees that Seller shall sell and Buyer shall purchase the Premises "as is, where is and with all faults" and Buyer is not relying on any representations or warranties of any kind whatsoever, whether oral or written, express or implied, statutory or otherwise, from Seller, nor any partner, officer, employee, attorney, agent or broker of Seller, as to any matter, concerning the Premises, or set forth, contained or addressed in any materials provided by Seller to Buyer with respect to the Premises (including without limitation, the completeness thereof). Without limiting the generality of the foregoing, Buyer expressly acknowledges and agrees that Buyer is not relying on any representation or warranty of Seller, nor any partner, officer, employee, attorney, agent or broker of Seller, whether implied, presumed or expressly provided at law or otherwise, arising by virtue of any statute, common law or other legally binding right or remedy in favor of Buyer. Buyer further acknowledges and agrees that Seller is under no duty to make any inquiry regarding any matter that may or may not be known to Seller or any partner, officer, employee, attorney, agent or broker of Seller. This Section shall survive the Closing, or, if the Closing does not occur, beyond the termination of this Agreement.

6.3  Buyer, for itself and any successors and assigns of Buyer, waives its right to recover from, and forever releases and discharges, and covenants not to sue, Seller, Seller's property and asset managers, any lender to Seller, the partners, trustees, shareholders, controlling persons, directors, officers, attorneys, employees and agents of each of them, and their respective heirs, successors, personal representatives and assigns (each a "Seller Party", and collectively, the "Seller Parties") with respect to any and all claims, whether direct or indirect, known or unknown, foreseen or unforeseen, that may arise on account of or in any way be connected with the Premises including, without limitation, the physical, environmental and structural condition of the Premises or any law or regulation applicable thereto (including, without limitation, any claim or matter relating to the use, presence, discharge or release of hazardous materials on, under, in. above or about the Premises); *provided, however*, Buyer does not waive its right under Section 12 hereof in connection with any default by Seller hereunder. This Section 6.3 shall survive the Closing. (Exhibit F)

(Purchase Agreement ¶¶ 6–6.3.) The Purchase Agreement further provided pertinent part as follows:

> For the period from the Effective Date to twelve o'clock noon on October 30, 2000 (the "Review Period"). Buyer shall have the right to inspect all aspects of the Premises including the leases and contracts in effect and all existing governmental approvals, and, in connection therewith, shall have the right at all reasonable times to enter onto the Premises in order to inspect the Premises and to conduct such tests as Buyer deems appropriate (subject to the terms of Section 3.2 below). If Buyer is dissatisfied with its investigations, Buyer shall have the right to terminate this Agreement at any time on or before twelve o'clock noon on the last day of' the Review Period, by providing written notice of termination to Seller on or before the expiration of the Review Period.

(Contract ¶ 3.1.)

During the negotiation of the Purchase Agreement, and prior to the closing, there were never any discussions between representatives of Sylvan or Ridge Seneca and representatives of First Allied concerning the environmental condition of the property. Amendment No. 1 to the contract provided in pertinent part as follows:

> 1. Buyer and Seller agree that the Contract is hereby reinstated and in full force and effect as amended by the terms of this Amendment.
>
> 2. Section 3.1 shall be deleted in its entirety, it being understood that Buyer has reviewed its contingency described therein and accepts the Property in its "as is" "where is" condition. Buyer acknowledges that Buyer has completed its investigations pursuant to section 3.2….
>
> 6. Except as amended hereby, all terms and conditions of the Contract shall remain unmodified and in full force and effect.

(First Amendment to Agreement to Purchase ¶¶1–2, 6.) The Amendment is consistent with Paragraph 6.1 of the Purchase Agreement, which provided that the property would be purchased "as is, where is and with all faults" and that there were no representations

whatsoever of any condition of the property on the part of First Allied, as well as the release provisions of Paragraph 6.3.

Pursuant to Paragraph 6.2 of the Purchase Agreement, Sylvan engaged Fisher Associates, P.E., L.S., P.C. to conduct a Phase I environmental study of the property. No Phase II environmental study was conducted prior to the closing.

In 2005, Ridge Seneca sought a new mortgage from Washington Mutual Bank and at that time petroleum was discovered under the property. There is no source of petroleum on the property itself and, although Plaintiff's original complaint included claims under the Oil Spill Law of the State of New York against First Allied, Ridge Seneca withdrew all claims made under that law against First Allied when it filed its amended complaint. In its amended complaint, Ridge Seneca included a claim against First Allied under the Comprehensive Environmental Response, Compensation, and Liability Act, Section 107, but Plaintiff has since withdrawn that claim as well.

Ridge Seneca has four remaining causes of action against First Allied, which are the following:

> AS AND FOR A SECOND CAUSE OF ACTION FOR MISTAKE AGAINST FIRST ALLIED, PLAINTIFF ALLEGES AS FOLLOWS:
>
> 97. Plaintiff repeats and realleges paragraphs "1" through "96" of this Amended Complaint, as if set forth in this paragraph at length.
>
> 98. Plaintiff, Sylvan and First Allied mistakenly believed that the Property was free of Contamination and did not require remediation, and based upon this mistaken fact, entered into or accepted the Purchase Agreement and/or held the Closing and recorded the Deed.
>
> 99. Plaintiff's mistaken belief regarding the Contamination and the lack of need for remediation was made despite its exercise of ordinary care in entering into the Purchase Agreement and investigating the Property.

100. This mistake was material in that the lack of Contamination on the Property was a fundamental assumption of the Purchase Agreement, and a fact which vitally affected the basis on which the Purchase Agreement was made, and the Closing was held.

101. First Allied was not a party to the Assignment, and plaintiff never agreed to the Purchase Agreement.

102. Accordingly, plaintiff is not bound by any "as is," waiver or release contained in the Purchase Agreement.

103. Further, enforcement of the "as is" and waivers or release contained in the Purchase Agreement that First Allied may claim survived the Closing would not only result in the unjust enrichment of First Allied at the expense of plaintiff, but would be unconscionable.

104. Accordingly, this Court should not enforce the Purchase Agreement against plaintiff, or should, in equity, reform the Purchase Agreement and the resulting Closing, so as to rescind any portions of the Purchase Agreement that survived the Closing, make an adjustment in the purchase price so that First Alliance is directed to reimburse plaintiff for the costs of investigation and remediation of the Contamination, and/or grant rescission or other appropriate equitable relief.

* * *

AS AND FOR AN TWELFTH CAUSE OF ACTION FOR NEGLIGENCE AGAINST GLAZER AND FIRST ALLIED, PLAINTIFF ALLEGES AS FOLLOWS:

141. Plaintiff repeats and realleges the allegations of paragraphs "1" through "140" of this Amended Complaint, as if set forth in this paragraph at length.

142. Defendants (including their officers, agents, servants, and/or employees) owed a duty of care to plaintiff and others with regard to their use, ownership and operation of the Property and investigation and disclosure of activities on or information related to the Property, including disclosure of the EMG Phase I (in the case of First Allied), and/or otherwise in connection with the Property.

143. Defendants (including their officers, agents, servants, and/or employees) acted unreasonably and negligently in: (a) failing to detect the Discharges, Releases, and/or Contamination; (b) First Allied failing to disclose to plaintiff the EMG Phase I; and (c) Glazer failing to take reasonable precautions necessary to prevent the Releases and/or the PCE

Contamination; and those acts or omissions were a direct and proximate cause of the damages to plaintiff.

144. Defendants, by reason of their negligence, are liable for all of the damages to plaintiff proximately caused by the Contamination, and investigation, cleanup and removal of the Contamination.

* * *

AS AND FOR A FOURTEENTH CAUSE OF ACTION FOR EQUITABLE OR IMPLIED INDEMNIFICATION AGAINST DEFENDANTS GLAZER AND FIRST ALLIED, PLAINTIFF ALLEGES AS FOLLOWS:

149. Plaintiff repeats and realleges the allegations of paragraphs "1" through "148" of this Amended Complaint, as if set forth in this paragraph at length.

150. Defendant Glazer, including his agents, servants, and/or employees, had a non-delegable duty to plaintiff to clean up or ensure against the PCE Contamination of the Property.

151. As a result of the breach of this duty by defendant Glazer, including his agents, servants, and/or employees, he is responsible for plaintiff's past and future expenses and damages in investigation, remediation, cleanup, and removal of, and response to, the PCE Contamination, and as a result, defendant Glazer should, in equity, indemnify plaintiff for some or all of its expenses, costs, and damages.

AS AND FOR A FIFTEENTH CAUSE OF ACTION FOR RESTITUTION AGAINST DEFENDANTS GLAZER AND FIRST ALLIED, PLAINTIFF ALLEGES AS FOLLOWS:

152. Plaintiff repeats and realleges the allegations of paragraphs "1" through "151" of this Amended Complaint, as if set forth in this paragraph at length.

153. It would be against equity and good conscience to permit defendants Glazer and First Allied to pass the burden of cleaning up the Contamination to plaintiff, and for defendant First Allied to have had the benefit of enjoyment of the use of the Property, free of any responsibility for investigation, remediation, cleanup, and removal of, and response to, the Contamination.

154. Therefore, defendants Glazer and First Allied should make restitution to plaintiff for some or all of its expenses, costs, and damages.

(Amend. Compl. ¶¶ 97–104, 141–54.)

The source of the petroleum contamination on the property is evidently from the former East Ridge Enterprise, Inc., gasoline station on the northeast corner of Seneca Avenue and Ridge Road East. First Allied contends, and Ridge Seneca disputes, that there is no documentation identifying when petroleum contamination first entered the property, and that there is no documentation as to whether petroleum contamination affected the property prior to February 27, 2001.

## STANDARD OF LAW

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v.*

*New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

## ANALYSIS

### *First Allied's Alleged Negligence in Failing to Disclose the EMG Phase I Report to Ridge Seneca*

Ridge Seneca argues that First Allied had a duty to disclose "all material information regarding the environmental condition of the Property prior to Closing…." (Ridge Seneca Mem. of Law at 2–3.) In particular, Ridge Seneca refers to the EMG Phase I completed on March 14, 1997, (Amend. Compl. ¶ 143(b)), which discussed a 1994 tank failure at the gasoline station adjacent to the Property, and pointed out that a dry cleaner had operated[2] prior to regulations on the disposal of hazardous dry cleaning waste. Ridge Seneca relies on *Stambovsky v. Ackley*, 169 A.D.2d 254 (N.Y. App. Div. 1st Dept. 1991) and *Young v. Keith*, 112 A.D.2d 625 (N.Y. App. Div. 3d Dept. 1985), to support its contention that First Allied had a duty to disclose even in the absence of a specific inquiry from Ridge Seneca. (Ridge Seneca Mem. of Law at 4.) First Allied counters:

> New York adheres to the doctrine of *caveat emptor* and imposes no duty on the seller to disclose any information concerning the premises when the parties deal at arm's length, unless there is some conduct on the part of the seller that constitutes active concealment (*see, Platzman v Morris*, 283 A.D.2d 561, 562 (2d Dep't 2001); *Howard Iron Works v. Buffalo Elevating Co.*, 113 A.D. 562, 570 (4th Dep't 1901)[3]).

(First Allied Mem. of Law at 5.) *Howard Iron Works* dealt with the sale of personal property, so is not relevant here, but in *Platzman*, cited in *Howard*, the appellate court, in a case

---

[2]The papers submitted in support of, and in opposition to, the motion, do not indicate whether the dry cleaner operated *on* the premises sold, or on an adjacent premises.

[3]The *Howard* case was actually decided on May 9, 1906, not 1901, and was affirmed on May 10, 1907. *Howard Iron Works v. Buffalo Elevating Co.*, 188 N.Y. 619 (1907).

concerning the sale of a house with a condition that violated the local zoning ordinance, held that the purchaser was not entitled to relief. There, the Second Department wrote:

> New York adheres to the doctrine of caveat emptor and imposes no duty on the seller to disclose any information concerning the premises when the parties deal at arm's length, unless there is some conduct on the part of the seller which constitutes active concealment (*see, London v Courduff*, 141 AD2d 803; *Stambovsky v Ackley*, 169 AD2d 254). To maintain a cause of action to recover damages for active concealment in the context of a fraudulent nondisclosure, the plaintiffs must show, in effect, that the seller thwarted the plaintiffs' effort to fulfill their responsibilities fixed by the doctrine of caveat emptor (*see, London v Courduff, supra*).

*Platzman v. Morris*, 283 A.D.2d 561, 562 (N.Y. App. Div. 2d Dep't 2001).

The Court agrees with First Allied's position and finds that the cases relied upon by Ridge Seneca are distinguishable. In *Stambovsky v. Ackley*, 169 A.D.2d 254 (N.Y. App. Div. 1st Dep't 1991), cited by Ridge Seneca, the First Department allowed the New York City purchaser of a house in the Village of Nyack to rescind the purchase on the basis that the seller failed to disclose that the house was reputed to be haunted:

> The case law in this jurisdiction dealing with the duty of a vendor of real property to disclose information to the buyer is distinguishable from the matter under review. The most salient distinction is that existing cases invariably deal with the physical condition of the premises (*e.g., London v Courduff, supra* [use as a landfill]; *Perin v Mardine Realty Co.*, 5 AD2d 685, *affd* 6 NY2d 920 [sewer line crossing adjoining property without owner's consent]), defects in title (*e.g., Sands v Kissane*, 282 App Div 140 [remainderman]), liens against the property (*e.g., Noved Realty Corp. v A. A. P. Co., supra*), expenses or income (*e.g., Rodas v Manitaras, supra* [gross receipts]) and other factors affecting its operation. No case has been brought to this court's attention in which the property value was impaired as the result of the reputation created by information disseminated to the public by the seller (or, for that matter, as a result of possession by poltergeists).
>
> Where a condition which has been created by the seller materially impairs the value of the contract and is peculiarly within the knowledge of the seller or unlikely to be discovered by a prudent purchaser exercising due care with respect to the subject transaction, nondisclosure constitutes a basis for rescission as a matter of equity. Any other outcome places upon the buyer

> not merely the obligation to exercise care in his purchase but rather to be omniscient with respect to any fact which may affect the bargain. No practical purpose is served by imposing such a burden upon a purchaser. To the contrary, it encourages predatory business practice and offends the principle that equity will suffer no wrong to be without a remedy.

*Stambovsky*, 169 A.D. 2d at 260. Ridge Seneca also cites to *Young v. Keith*, 112 A.D.2d 625 (N.Y. App. Div. 3d Dept. 1985). In *Young*, the court wrote:

> nondisclosure may constitute a false representation where a party has a duty to communicate the undisclosed information to the other contracting party (24 NY Jur, Fraud and Deceit, § 106, at 159). Such a duty can arise when one party to a contract has superior knowledge which is not available to both parties (24 NY Jur, Fraud and Deceit, § 108, at 162). As the Court of Appeals has stated, "Concealment with intent to defraud of facts which one is duty-bound in honesty to disclose is of the same legal effect and significance as affirmative misrepresentations of fact" (*Nasaba Corp. v Harfred Realty Corp.*, 287 NY 290, 295). Considering the allegations that the mobile home park was sold as an operating business and that the sewer and water systems' deficiencies were known by defendants to require very expensive reconstruction and to pose a threat to the business' operating license, a duty to disclose the deficiencies could be found. Plaintiff's complaint can be further read to allege that they could not have discovered the deficiencies through an ordinary inspection and that they would not have purchased the property had they known of them.

*Young*, 112 A.D.2d at 626–27.

From these and other cases cited by Ridge Seneca in its memorandum of law, the Court concludes that in order to maintain a cause of action for failing to disclose the existence of the EMG Phase I report, Ridge Seneca would have to show that First Allied actively concealed the report or the conditions on which it reported, or, as in the case of a haunted house,

> a very practical problem arises with respect to the discovery of a paranormal phenomenon: "Who you gonna' call?" as a title song to the movie "Ghostbusters" asks. Applying the strict rule of caveat emptor to a contract involving a house possessed by poltergeists conjures up visions of a psychic or medium routinely accompanying the structural engineer and Terminix man on an inspection of every home subject to a contract of sale. It portends that

> the prudent attorney will establish an escrow account lest the subject of the transaction come back to haunt him and his client—or pray that his malpractice insurance coverage extends to supernatural disasters. In the interest of avoiding such untenable consequences, the notion that a haunting is a condition which can and should be ascertained upon reasonable inspection of the premises is a hobgoblin which should be exorcised from the body of legal precedent and laid quietly to rest.

*Stambovsky*, 169 A.D.2d at 257. No evidentiary proof in the record shows active concealment, or a situation that could not be ascertained upon reasonable inspection of the premises, especially considering the commercial entities that were parties to the transaction.

***Purchase Agreement between First Allied and Sylvan Enterprise Corp.***

First Allied contends that Ridge Seneca is bound by the terms of the purchase agreement between First Allied and Sylvan, which assigned the contract to Ridge Seneca. Ridge Seneca counters that, "while the rights in the Purchase Agreement were assigned to [it], the associated burdens were not." (Ridge Seneca Mem. of Law at 7.) In other words, it apparently is Ridge Seneca's position that they are therefore not bound by the terms of the contract between Sylvan and First Allied, whereby Sylvan purchased the property "as is, where is and with all faults."

In *Langel v. Betz*, 250 N.Y. 159, 161 (1928), the New York Court of Appeals reviewed the question of whether an assignee of a contract is bound by the contract's obligations, as well as being entitled to the benefits of the contract. *See also Kaufman v. William Iselin & Co.*, 272 A.D. 578, 581 (N.Y. App. Div. 1st Dep't 1947) ("The question whether an assignee assumes the duties as well as the rights under an assigned contract was considered at length by the Court of Appeals in *Langel v. Betz*, 250 N.Y. 159, 163, 164 N.E. 890, 891."). In *Langel*, the Court wrote:

> The mere assignment of a bilateral executory contract may not be interpreted as a promise by the assignee to the assignor to assume the performance of the assignor's duties, so as to have the effect of creating a new liability on the part of the assignee to the other party to the contract assigned. The assignee of the vendee is under no personal engagement to the vendor where there is no privity between them.

*Langel*, 250 N.Y. 161–62. However, the Court of Appeals in *Langel* then pointed out that a contrary interpretation may result where circumstances surrounding the assignment itself indicate a promise on the part of the assignee to assume the assignor's duties. *Id*. at 163.

Here, the Assignment of Purchase Agreement signed by Nobel as assignor and as one of the assignees, reads in pertinent part as follows:

> KNOW ALL BY THESE PRESENTS, that Sylvan Enterprises Corp.… ("Assignor"), for good and valuable consideration…, hereby assigns and conveys to Ridge Seneca Plaza, LLC, …all right, title, and interest of Assignor in and to that certain Purchase Agreement by and between Assignor and First Allied Shopping Center, L.P. ("Seller"), dated September 14, 2000, as amended by that certain First Amendment to Agreement to Purchase between Assignor and Seller dated January 11, 2001 (collectively, the "Contract"), relating to certain property located in the City of Rochester, County of Monroe, and State of New York, known as Ridge Seneca Plaza and more particularly described in the Contract (the "Premises").
>
> TO HAVE AND TO HOLD the said Contract unto Assignee, its successors and assigns, to its and their use and behoof [sic] forever.

(Nussbaum Aff. Ex. J.) What Sylvan assigned to Ridge Seneca was the entire Purchase Agreement including Paragraphs 6.1, 6.2 and 6.3, quoted above. Paragraph 6.1 specifies that the Property is being purchased "as is, where is and with all faults." Paragraph 6.2 makes clear that, "[a]ny reports, repairs or work required by Buyer are the sole responsibility of Buyer, and Buyer agrees that there is no obligation on the part of Seller to make any changes, alterations or repairs to the Premises or to cure any violations of law or to comply with the requirements of any insurer." (Purchase Agreement ¶ 6.2.) Finally,

Paragraph 6.3, binds not only the buyer to the terms of the contract, but also any successors and assignees of Buyer. Ridge Seneca's citations to eight cases in its memorandum of law do not support a contrary conclusion.

### *Ridge Seneca's Mutual Mistake Claim*

Ridge Seneca claims that its purchase of the Premises was based on a mutual mistake of fact. First, it contends that while First Allied should have disclosed the EMG Phase I report. In the alternative, Ridge Seneca argues that if First Allied did not understand the significance of the report's findings, then it did not perceive the true condition of the property and was, therefore, mistaken as to the condition of the property it was selling. (Ridge Seneca Mem. of Law at 9.)

The general rule in New York is that "a contract is voidable under the equitable remedy of rescission if the parties entered into the contract under a mutual mistake of fact which is substantial and existed at the time the contract was entered into." *Rekis v. Lake Minnewaska Mountain Houses, Inc.*, 170 A.D.2d 124, 130 (N.Y. App. Div. 3d Dep't 1991) (citations omitted). "An objective test is used to determine whether there has been a mutual mistake…." *Ryan v. Boucher*, 144 A.D.2d 144, 145 (N.Y. App. Div. 3d Dep't 1988) (citation omitted).

The assigned contract contained no representations as to the condition of the premises that First Allied was selling to Sylvan in the contract assigned to Ridge Seneca. Instead, the contract specifically left it to the purchaser to determine whether the condition of the property was such that the purchaser did not want to purchase it. The Court has twice, above, quoted paragraphs 6.1 and 6.3 of the Purchase Agreement. Those provisions made it clear that whether First Allied understood the significance of the EMG Phase I

Report was irrelevant to the sale. First Allied was selling the property "as is, where is and with all faults" and Ridge Seneca has not shown that First Allied made any representations as to the property's condition.

## CONCLUSION

First Allied Shopping Center, LP's motion (Docket No. 104) for summary judgment is granted. The following causes of action plead against it are dismissed:

> AS AND FOR A SECOND CAUSE OF ACTION FOR MISTAKE AGAINST FIRST ALLIED….
>
> AS AND FOR AN TWELFTH CAUSE OF ACTION FOR NEGLIGENCE AGAINST GLAZER AND FIRST ALLIED….
>
> AS AND FOR A FOURTEENTH CAUSE OF ACTION FOR EQUITABLE OR IMPLIED INDEMNIFICATION AGAINST DEFENDANTS GLAZER AND FIRST ALLIED….
>
> AS AND FOR A FIFTEENTH CAUSE OF ACTION FOR RESTITUTION AGAINST DEFENDANTS GLAZER AND FIRST ALLIED….

It Is So Ordered.

Dated:   May 2, 2011
         Rochester, New York

                    ENTER.

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge